# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| MARY PHILLIPS, an individual, ) | |
| ) | |
| Plaintiff, ) | Case No.: 2:13-cv-02237-GMN-VCF |
| vs. ) | |
| ) | **ORDER** |
| DIGNIFIED TRANSITION SOLUTIONS, a ) | |
| Delaware limited liability company; BANK ) | |
| OF AMERICA, N.A.; and DOES 1 through 10,) | |
| inclusive, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Pending before the Court is a Partial Motion to Dismiss (ECF No. 8) filed by Defendants Dignified Transition Solutions ("DTS") and Bank of America, N.A. ("BOA") (collectively "Defendants") on December 27, 2013.  Plaintiff Mary Phillips ("Plaintiff") filed her Response in Opposition (ECF No. 16) on February 3, 2014.  Defendants filed a Reply in Support of their Motion to Dismiss (ECF No. 21) on February 27, 2014.

Subsequently, on April 9, 2014, Plaintiff filed a Motion for Leave to File a Surreply (ECF No. 22) arguing that Defendants had raised two new arguments in their Response.  On April 17, 2014, Defendants filed a Response to the Motion for Leave to File (ECF No. 23) in which they oppose Plaintiff's filing of a surreply in regards to one of the arguments allegedly raised in the first time in their Reply but do not oppose a surreply on the other argument.

## I.   BACKGROUND

According to the Complaint (ECF No. 1-1), Plaintiff is an elderly woman currently residing in Dallas, Texas who began looking for a retirement home in Las Vegas in or around 2010 and 2011. (Compl. ¶¶ 1, 6, ECF No. 1-1.)  Sometime in 2011, Plaintiff discovered a home in the Las Vegas Country Club Estates at 2911 Augusta Drive, Las Vegas, NV 89109 (the

"Property") that met her "special and unique needs" because it was one-story and near her family. (*Id.* ¶¶ 6-7.)

The Property was being marketed as part of a cooperative short sale program (the "Program") overseen by BOA and administered by DTS. (*Id.* ¶ 8.)  The promotions for the Program touted its ability to streamline and speed up the short sale process by, among other things, determining pre-approved listing prices for participating properties. (*Id.* ¶¶ 9-11.)

In or around September of 2011, agents of DTS represented to Plaintiff that the pre-approved listing price for the Property was $274,753.00 and that, because of the streamlined process under the Program, they expected to close on the Property in three to four weeks. (*Id.* ¶¶ 15-16.)  Based on these representations, in September of 2011, Plaintiff entered into a purchase agreement with the seller to purchase the Property for $275,000.00 and paid $10,000.00 in earnest money. (*Id.* ¶ 17.)

However, Plaintiff alleges that between September 2011 and December 2012, Defendants repeatedly delayed the closing on the Property by, *inter alia*, ignoring communications with Plaintiff, billing Plaintiff previously undisclosed costs, and unilaterally changing proposed closing dates and increasing the purchase price. (*Id.* ¶¶ 18-21.)  Eventually in March 2012, Plaintiff was advised by Defendants that the Property could be purchased at the original purchase price of $275,000.00 with a closing date of April 15, 2012, but that date also came and went without any transaction taking place. (*Id.* ¶¶ 22-23.)  Finally, in December 2012, the Property was sold by DTS at a Trustee Sale to someone other than Plaintiff for $360,000. (*Id.* ¶ 27.)

Subsequently, on October 23, 2013, Plaintiff filed her Complaint (ECF No. 1-1) in state court asserting causes of action for (1) violations of Nevada's Deceptive Trade Practices Act ("DTPA"); (2) breach of contract; (3) interference with contractual relations; (4); fraud or intentional misrepresentation; (5) intentional infliction of emotional distress; (6) consumer

fraud; (7) attorney's fees and costs; (8) negligent misrepresentation; and (9) promissory estoppel. (*Id.* ¶¶ 28-82.)  On December 6, 2013, Defendants filed a Notice of Removal (ECF No. 1) removing the action to this Court.  Then on December 27, 2013, Defendants filed the pending Partial Motion to Dismiss, in which they seek dismissal of Plaintiff's claims for (1) violations of DTPA; (2) breach of contract; (4) fraud or intentional misrepresentation; (5) intentional infliction of emotional distress; and (8) negligent misrepresentation. (Mot. to Dismiss 1:22-2:4, ECF No 8.)

## II.    LEGAL STANDARD

Rule 12(b)(6) of the Federal Rules of Civil Procedure mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted. *See North Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the Court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).

The Court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is *plausible*, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 555) (emphasis added).

In order to survive a motion to dismiss, a complaint must allege "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal

quotation marks omitted). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

"Generally, a district court may not consider any material beyond the pleadings in ruling on a Rule 12(b)(6) motion . . . .  However, material which is properly submitted as part of the complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citations omitted).  Similarly, "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6) motion to dismiss" without converting the motion to dismiss into a motion for summary judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  Under Federal Rule of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay Beer Distrib.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if the district court considers materials outside of the pleadings, the motion to dismiss is converted into a motion for summary judgment. *See* FED. R. CIV. P. 12(d); *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001).

If the court grants a motion to dismiss, it must then decide whether to grant leave to amend.  Pursuant to Rule 15(a), the court should "freely" give leave to amend "when justice so requires," and in the absence of a reason such as "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of the amendment, etc." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  Generally, leave to amend is only denied when it is clear that the deficiencies of the complaint cannot be cured by amendment. *See DeSoto v. Yellow Freight Sys., Inc.*, 957 F.2d 655, 658 (9th Cir. 1992).

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

## III.   <u>DISCUSSION</u>

### A.  Violations of DTPA

Under Nevada law, "[a]n action may be brought by any person who is a victim of consumer fraud." NEV. REV. STAT. § 41.600(1).  "A claim under the [DTPA] requires a 'victim of consumer fraud to prove that (1) an act of consumer fraud by the defendant (2) caused (3) damage to the plaintiff.'" *Sattari v. Washington Mut.*, 475 F. App'x 648, 648 (9th Cir. 2011) (citing *Picus v. Wal–Mart Stores, Inc.*, 256 F.R.D. 651, 658 (D. Nev. 2009).[1]  Consumer fraud under the statute includes deceptive practices, such as "[a]dvertis[ing] goods or services with intent not to sell or lease them as advertised" or "[k]nowingly mak[ing a] ... false representation in a transaction." NEV. REV. STAT. § 598.0915(9), (15).

Defendants move to dismiss Plaintiff's DTPA claim on the grounds that the DTPA does not apply to real estate transactions and Plaintiff has failed to cite in her complaint the specific subsections in the DTPA that she alleges have been violated. (Mot. to Dismiss 3:14-19, ECF No. 8.)  Plaintiff responds that the DTPA does apply to real estate transactions and that pleading a specific subsection is not required under the statute. (Resp. 8:13-12:6, ECF No 16.)  Plaintiff also asks that if this Court determines that pleading a specific subsection is required, that Plaintiff be permitted to amend her complaint to include the specific subsections Plaintiff alleges have been violated by Defendants. (*Id.*)

First, the Supreme Court of Nevada has explicitly rejected Defendants' argument that the DTPA does not apply to real estate transactions. *See Betsinger v. D.R. Horton, Inc.*, 232 P.3d 433, 436 n.4 (Nev. 2010) ("Respondents tangentially argue that NRS Chapter 598's statutory scheme does not regulate the deceptive sale of real property; … we reject

_____

[1] At the time of this order, the Nevada Supreme Court has not specified the elements of a DTPA action.  "Where the state's highest court has not decided an issue, the task of the federal courts is to predict how the state high court would resolve it." *Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 872 (9th Cir. 2007) (quotation omitted).

respondents' narrow interpretation of NRS Chapter 598 and conclude that this argument is without merit.").  Therefore, dismissal of Plaintiff's DTPA claim on that ground is without merit.  Additionally, though Plaintiff does not cite the specific subsections of the DTPA that correspond to Defendants' alleged deceptive practices, the language in her Complaint mirrors the language of specific subsections in the statute.[2]  While it certainly would have been preferable for Plaintiff to have included citations to specific subsections of the statute, failing to cite the specific subsections does not, by itself, require dismissal of Plaintiff's claims under the DTPA when Defendants still have sufficient notice of Plaintiff's claims.

Accordingly, Plaintiff's claims under DTPA shall not be dismissed.

**B.  Breach of Contract**

A claim for breach of contract must allege (1) the existence of a valid contract; (2) that plaintiff performed or was excused from performance; (3) that the defendant breached the terms of the contract; and (4) that the plaintiff was damaged as a result of the breach. *See* Restatement (Second) of Contracts § 203 (2007); *Calloway v. City of Reno*, 993 P.2d 1259, 1263 (Nev. 2000) ("A breach of contract may be said to be a material failure of performance of a duty arising under or imposed by agreement").  A valid, enforceable contract requires: (1) an offer and acceptance, (2) meeting of the minds, and (3) consideration. *May v. Anderson*, 119 P.3d

---

[2] *Compare* (Complaint ¶ 29, ECF No. 1-1) ("Defendants knowingly made false representations regarding their services and the pending transaction") *with* NEV. REV. STAT. § 598.0915(15) ("A person engages in a 'deceptive trade practice' if … he or she … [k]nowingly makes any other false representation in a transaction."); (Complaint ¶ 30, ECF No. 1-1) ("Defendants marketed their services with intent not to perform them as advertised") *with* NEV. REV. STAT. § 598.0915(9) ("A person engages in a 'deceptive trade practice' if … he or she … [a]dvertises goods or services with intent not to sell or lease them as advertised."); (Complaint ¶ 31, ECF No. 1-1) ("Defendants employed 'bait and switch' advertising through various actions, including, … requiring additional undisclosed conditions before performing the advertised services") *with* NEV. REV. STAT. § 598.0917(3) ("A person engages in a 'deceptive trade practice' when … he or she employs 'bait and switch' advertising [such as r]equiring other sales or other undisclosed conditions be met before selling or leasing the advertised goods or services); (Complaint ¶ 32, ECF No. 1-1) ("Defendants also failed to disclose material facts in connection with their services") *with* NEV. REV. STAT. § 598.0923(2) ("A person engages in a 'deceptive trade practice' when … he or she knowingly … [f]ails to disclose a material fact in connection with the sale or lease of goods or services.").

1254, 1257 (Nev. 2005).

Defendants move to dismiss Plaintiff's breach of contract claim on the grounds that there was no valid contract between the parties. (Mot. to Dismiss 5:3-19, ECF No. 8.)  Plaintiff counters by arguing that all the elements for a valid contract were pled in her Complaint.[3] (Resp. 12:17-13:13, ECF No 16.)  At the current stage of this litigation, Plaintiff is not required to prove the existence of a valid contract.  *See Iqbal*, 556 U.S. at 678.  All Plaintiff must do to survive a motion to dismiss challenging the existence of the contract is sufficiently allege the elements of a valid contract, which Plaintiff has done here.  Therefore, her breach of contract claim will not be dismissed because she has not yet proven the existence of a valid contract.

In their Reply, Defendants for the first time raise the issue that Plaintiff's breach of contract claim fails to satisfy the statute of frauds. (Reply 3:12-4:8, ECF No. 21.)  In her Proposed Surreply,[4] Plaintiff asserts that the statute of frauds does not apply here because the contract at issue was an agreement for short-sale streamlining services and not for the sale of real property and because the agreement is documented, but the document is in the exclusive possession of Defendants. (Proposed Surreply 3:19-4:4, ECF No. 22-1.)

The Nevada Statute of Frauds requires that all contracts affecting any interest in land are void unless they are in writing that is signed by the party against whom the contract is to be enforced. NEV. REV. STAT. § 111.210(1).  Accordingly, the statute of frauds not only applies to

---

[3] Specifically, in paragraph 40, Plaintiff alleges that "around March 2012, Defendants and Plaintiff entered into a valid and binding contract pertaining to [the] sale of the Property at a pre-established price using the Program marketed and managed by DTS, wherein Plaintiff accepted Defendants' 'counter-offer' at the original $275,000.00 selling price with a closing date no later than April 15, 2012." (Compl. ¶ 40, ECF No. 1-1.)

[4] Defendants do not dispute that they raised their statute of frauds argument for the first time in their Reply. (Resp. to Request for Surreply, ECF No. 22.)  However, Defendants' argument relating to the nature of the contract that was allegedly breached is not a new issue but rather an elaboration of their argument in their initial motion. (Mot. to Dismiss 5:12-16, ECF No. 8.)  Accordingly, the Court will only consider and admit the portion of Plaintiff's Proposed Surreply addressing the statute of frauds. *See Kanvick v. City of Reno*, No. 3:06-CV-00058, 2008 WL 873085, at *1, n.1 (D. Nev. March 27, 2008) ("A sur-reply may only be filed by leave of court, and only to address new matters raised in a reply to which a party would otherwise be unable to respond.").

contracts for the sale of land, but also to other agreements affecting an interest in land, such as short sale agreements. *See Altman v. PNC Mortgage*, 850 F. Supp. 2d 1057, 1079 (E.D. Cal. 2012) ("[A] purported short sale agreement requires a writing to satisfy the statute of frauds."); *Mackovska v. Recontrust Co., N.A.*, 2:12-CV-421 JCM CWH, 2013 WL 2152697, at \*3 (D. Nev. May 16, 2013) ("A purported short sale agreement must satisfy the statute of frauds."). Therefore, Plaintiff is incorrect that the statute of frauds does not apply in this case.

However, Plaintiff does not allege that the short sale agreement was oral or unwritten. Instead, she asserts that there is a document evidencing the agreement, but it is completely within the Defendants' possession and is currently inaccessible to Plaintiff. (Proposed Surreply 3:25-4:4, ECF No. 22-1.)  Under Nevada law, if a plaintiff has alleged the existence of a written contract but is unable to produce the contract because of the action of inaction of defendants, those defendants cannot rely on the statue of frauds to bar her claims arising from the contract. *See Khan v. Bakhsh*, 306 P.3d 411, 413 (Nev. 2013) ("[W]hen one party allegedly stole or destroyed the agreement, … that party may not use the statute of frauds to sanction his obliteration of the agreement to the detriment of the other party.").

Accordingly, Plaintiff's breach of contract claim shall not be dismissed.

## C.  Fraudulent or Intentional Misrepresentation

To succeed on a claim for fraud or intentional misrepresentation, a plaintiff must show: (1) a false representation by the defendant that is made with either knowledge or belief that it is false or without sufficient foundation; (2) an intent to induce another's reliance; and (3) damages that result from this reliance. *See Nelson v. Heer*, 163 P.3d 420, 426 (Nev. 2007). Furthermore, a claim of "fraud or mistake" must be alleged "with particularity." FED. R. CIV. P. 9(b).  A complaint alleging fraud or mistake must include allegations of the time, place, and specific content of the alleged false representations and the identities of the parties involved. *See Swartz v. KPMG LLP*, 476 F.3d 756, 764 (9th Cir. 2007) (per curiam).  Additionally, "Rule

9(b) does not allow a complaint to merely lump multiple defendants together but requires plaintiffs to differentiate their allegations when suing more than one defendant." (*Id.*) (internal quotations omitted).  The circumstances constituting the alleged fraud must be specific enough to give defendants notice of the particular misconduct alleged so that they can defend against the charge. *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

Defendants move to dismiss Plaintiff's intentional misrepresentation claim on the grounds that Plaintiff has failed to allege her claims with sufficient specificity. (Mot. to Dismiss 5:20-6:24, ECF No. 8.)  After reviewing the Complaint, the Court agrees.

In her Complaint, Plaintiff has alleged at least two instances of intentional misrepresentation by Defendants.  First, Plaintiff alleges that in September of 2011, (Complaint ¶¶ 15, 19–20, ECF No. 1-1), DTS and its employees—specifically Reza Sahraeean and Joe Ramirez—, (*Id.* ¶¶ 15, 52), made several misrepresentations to her, including that "the valuation process was completed," that Defendants had "agreed upon a pre-approved listing price of $274,753.00 for the Property," and that the Property's participation in the Program "would result in an expedited closing time." (*Id.* ¶¶ 15, 18, 51.)  Plaintiff further alleges that these representations were false because Defendants "repeatedly moved (without explanation) transaction closing dates, … increased the Property purchase price, … required additional unforeseen costs, and changed the purchase terms." (*Id.* ¶ 20.)  Therefore, the Complaint alleges the time, content, and identities of the parties associated with these alleged misrepresentations.  Plaintiff's Complaint, however, does not allege the place or circumstances of the misrepresentations adequately enough to provide notice of her claims.  Specifically, Plaintiff does not state the method by which these misrepresentations were communicated, where the misrepresentations were made, or in some other way provide enough context surrounding the communications by DTS's employees to effectively provide notice to DTS of the specific misrepresentations alleged in the Complaint.

Likewise, Plaintiff's second allegation of intentional misrepresentation is that around March 2012, Defendants represented to Plaintiff that they had reapproved a listing price of $275,000.00 for the Property with an expected closing date of no later than April 15, 2012, but that no closing at this price or time ever occurred. (*Id.* ¶¶ 22–23.) This allegation also fails to sufficiently allege the place or context of the misrepresentation, and it also fails to identify or differentiate which Defendant or their agent made the alleged misrepresentation. In Order to properly plead a claim for this misrepresentation, Plaintiff must provide additional context surrounding the misrepresentation and identify which Defendant she alleges committed the misrepresentation.

Accordingly, because it does not appear that amending the Complaint to correct the defects noted above would be futile, Plaintiff's intentional misrepresentation claims are dismissed without prejudice.

### D. Negligent Misrepresentation

Nevada has adopted the Restatement (Second) of Torts definition of negligent misrepresentation. *Barmettler v. Reno Air, Inc.*, 956 P.2d 1382, 1387 (Nev. 1998) (citing *Bill Stremmel Motors, Inc. v. First Nat'l Bank of Nev.*, 575 P.2d 938, 940 (Nev. 1978)). Under this theory of liability:

> One who, in the course of his business, profession or employment, or in any other action in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

Restatement (Second) of Torts § 552 (1977); *see also Bill Stremmel Motors*, 575 P.2d at 940.

Defendants move to dismiss Plaintiff's negligent misrepresentation claim on the grounds that Defendants did not owe a duty of care to Plaintiff and the economic loss doctrine bars recovery of purely economic losses under a tort theory. (Mot. to Dismiss 6:25-7:12, ECF No.

8.)  Defendants base their assertion that they owe no duty of care to Plaintiff solely on the principle that a borrower never owes such a duty to its lender. (*Id.* 6:25-7:7.)  It is true that Nevada law does not recognize a fiduciary relationship between a borrower and a lender. *See Giles v. Gen. Motors Acceptance Corp.*, 494 F.3d 865, 882 (9th Cir. 2007) (noting the Nevada Supreme Court would not recognize a fiduciary relationship as a matter of law between a lender and borrower).  However, while "a lender generally owes no duty of care to its borrower[,] this is only true in a lender's conventional role as a mere lender of money." *Gomez v. Countrywide Bank, FSB*, 74 Fed. R. Serv. 3d 1339, at *8 (D. Nev. 2009) (internal quotations omitted).  Here, Plaintiff is not alleging negligent misrepresentation by Defendants in their role as lenders, but rather is alleging negligence in their servicing of the Program. (Compl. ¶ 69, ECF No. 1-1.) Therefore, the general rule that a borrower does not owe a duty of care to its lender does not apply to the parties in this case.

The economic loss doctrine is equally inapplicable to the present case.  Defendants assert that the economic loss doctrine bars Plaintiff's negligent misrepresentation claims because the damages alleged are purely economic. (Mot. to Dismiss 7:8-12, ECF No. 8); *see Calloway v. City of Reno*, 993 P.2d 1259, 1263 (Nev. 2000) ("Under the economic loss doctrine there can be no recovery in tort for purely economic losses.") *overruled on other grounds by Olson v. Richard*, 89 P.3d 31 (Nev. 2004).  However, "negligent misrepresentation is a special financial harm claim for which tort recovery is permitted because without such liability the law would not exert significant financial pressures to avoid such negligence." *Terracon Consultants W., Inc. v. Mandalay Resort Grp.*, 206 P.3d 81, 88 (Nev. 2009).  The Supreme Court of Nevada, therefore, has held that there are "exceptions to the economic loss doctrine for negligent misrepresentation claims in a certain category of cases when strong countervailing considerations weigh in favor of imposing liability." *Halcrow, Inc. v. Eighth Jud. Dist. Ct.*, 302 P.3d 1148, 1153 (Nev. 2013) (internal quotations omitted).  "These types of cases encompass

economic loss sustained, for example, as a result of … negligent misstatements about financial matters." *Id.*  Defendants do not provide any legal support or persuasive reasoning as to why the negligent misrepresentation exception to the economic loss doctrine should not apply here.

Accordingly, Plaintiff's negligent misrepresentation claims shall not be dismissed.

### E.  Intentional Infliction of Emotional Distress

The elements of a cause of action for intentional infliction of emotional distress are: "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation." *Dillard Dept. Stores, Inc. v. Beckwith*, 989 P.2d 882, 886 (Nev. 1999).  "Extreme and outrageous conduct is that which is 'outside all possible bounds of decency' and is regarded as 'utterly intolerable in a civilized community.'" *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998) (citing Cal. Jury Instr.--Civ. 12.74).

Furthermore, except in the case of assault, Nevada courts have required a plaintiff to demonstrate that he or she has suffered some physical manifestation of emotional distress in order to support an award for emotional damages. *Betsinger*, 232 P.3d at 436; *see also Barmettler*, 956 P.2d at 1387 ("[I]n cases where emotional distress damages are not secondary to physical injuries, but rather, precipitate physical symptoms, either a physical impact must have occurred or, in the absence of physical impact, proof of 'serious emotional distress' causing physical injury or illness must be presented.").

Defendants move to dismiss Plaintiff's emotional distress claim on the grounds that Plaintiff has failed to allege extreme and outrageous conduct on the part of Defendants or sufficient physical injury. (Mot. to Dismiss 5:20-6:24, ECF No. 8.)  Plaintiff counters that her Complaint does allege that Defendants engaged in sufficiently extreme and outrageous conduct and that she does not need to plead physical injury for her emotional distress claim to survive a motion to dismiss. (Resp. 19:6-21:2, ECF No 16.)

While Plaintiff's Complaint may contain allegations of sufficiently extreme and outrageous conduct on the part of Defendants, emotional distress claims in Nevada based upon failed real estate and lending transactions do require allegations of some physical manifestation of the distress in order to survive dismissal. *See Betsinger*, 232 P.3d at 436 ("there is no guarantee of the legitimacy of a claim for emotional distress damages resulting from a failed real estate and lending transaction without a requirement of some physical manifestation of emotional distress."). Plaintiff's conclusory statement that "[t]he emotional distress manifested itself in physical problems" is insufficient to plead the physical injury or illness required for her emotional distress claim.

Accordingly, Plaintiff's claim for intentional infliction of emotional distress is dismissed without prejudice.

## IV.   **CONCLUSION**

**IT IS HEREBY ORDERED** that Defendants' Partial Motion to Dismiss (ECF No. 8) is **GRANTED in part and DENIED in part**. Plaintiff's intentional misrepresentation and intentional infliction of emotional distress claims are dismissed without prejudice. Plaintiff shall have until September 12, 2014 to file an amended complaint correcting the deficiencies described in this Order.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Leave to File a Surreply (ECF No. 22) is **GRANTED in part and DENIED in part**. The court admits and considers the portion of Plaintiff's Proposed Surreply (ECF No. 22-1) relating to Defendants' statute of fraud defense (Proposed Surreply 3:19-4:4, ECF No. 22-1). The remainder of the document is stricken.

**DATED** this __28__ day of August, 2014.

_____
Gloria M. Navarro, Chief Judge
United States District Judge