# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| MARY PHILLIPS, | ) |
| Plaintiff, | ) Case No.: 2:13-cv-2237-GMN-VCF |
| vs. | ) |
| | ) **ORDER** |
| DIGNIFIED TRANSITION SOLUTIONS; BANK OF AMERICA, N.A., | ) |
| Defendants. | ) |

Pending before the Court is the Motion for Summary Judgment filed by Defendants Bank of America, N.A. ("BANA") and Dignified Transition Solutions ("DTS"), (ECF No. 43), to which Plaintiff Mary Phillips ("Plaintiff") responded in opposition, (ECF No. 72).  Also before the Court is Plaintiff's Motion for Summary Judgment, (ECF No. 44), to which Defendants responded in opposition, (ECF No. 71), and Plaintiff replied, (ECF No. 74).  For the reasons set forth herein, Defendants' Motion will be granted and Plaintiff's Motion will be denied.

## I.     BACKGROUND

This case centers upon Plaintiff's claims that Defendants refused to sell a home for a price they had advertised through a cooperative short sale program. (Am. Compl., ECF No. 39). Plaintiff is an elderly woman who began looking for a retirement home in Las Vegas in 2011. (Pl.'s Aff. ¶ 2, Ex. A to Pl.'s Resp., ECF No. 72).  Sometime in 2011, Plaintiff discovered a home in the Las Vegas Country Club Estates at 2911 Augusta Drive, Las Vegas, NV 89109 (the "Property") that met her "special and unique needs" because it was one story and located near her family. (Am. Compl. ¶ 7).

On August 7, 2011, Plaintiff entered into a residential purchase agreement with the

Property's owner, Ilya Klein, to purchase the Property for $388,000. (Aug. 2011 Residential Purchase Agreement pp. 306-324, ECF No. 44-4).  As part of this agreement, Plaintiff submitted a $10,000 earnest money deposit to Mr. Klein.  Shortly after executing the residential purchase agreement, Plaintiff learned that the Property had been advertised by Defendants as being part of a cooperative short sale program (the "Short Sale Program"). (Pl.'s Aff. ¶ 4). Plaintiff claims that agents of Defendant DTS represented to Plaintiff that the pre-approved listing price for the Property within the Short Sale Program was $274,753.00 and that, because of the Short Sale Program's streamlined process, a purchaser should be ready to close on the Property in two to three weeks. (Pl.'s Deposition 14:25-15:24, ECF No. 44-8).  Based on these representations, in September of 2011, Plaintiff forfeited her $10,000 earnest money deposit to Mr. Klein under the residential purchase agreement and sought to purchase the Property through the Short Sale Program. (Pl.'s Aff. ¶ 5).

On September 20, 2011, Plaintiff entered into a second residential purchase agreement (the "Short Sale Agreement") with Mr. Klein, which provided that the Property would be sold to Plaintiff for the price of $275,000, subject to Defendants' approval. (Sept. 2011 Residential Purchase Agreement pp. 243-256, ECF No. 44-6).  Specifically, the Short Sale Agreement contained a provision stating:

> **Contingent on Existing Lender Approval.**  Buyer and Seller acknowledge that the Purchase Price is less than the amount of Seller's existing loan(s) against the property due and owing to one or more lender(s) and/or lienholder(s) (collectively, "Lender").  Such a transaction is called a "short sale."  Therefore, [this] Purchase Agreement is contingent upon Seller and/or Seller's Agent obtaining approval from Lender ("Lender Approval") to accept an amount less than what is owed on the Property. Seller shall reasonably cooperate with Lender in the short sale process by providing such documentation as may be required by Lender. **BUYER AND SELLER UNDERSTAND THAT LENDER APPROVAL MAY TAKE SEVERAL MONTHS TO OBTAIN, AND NEITHER THE SELLER, THE ESCROW HOLDER NOR THE BROKERS CAN GUARANTEE THE TIMELINESS OF LENDER'S REVIEW, APPROVAL OR REJECTION.**

(*Id.* at 256). Notably, neither Defendant in this case executed the Short Sale Agreement.

After receiving the Short Sale Agreement and conducting an appraisal upon the Property, Defendants returned to Plaintiff with a counteroffer of $350,000. (January 19, 2012 Offer Worksheet pp. 228-29, ECF No. 44-6). On March 6, 2012, Plaintiff submitted an offer to Defendants to purchase the Property for $275,000. (March 12, 2012 Offer Worksheet pp. 384-85, ECF No. 44-4). Three days later, on March 9, 2012, Defendants offered a sale price of $275,000. (*Id.*).

On June 25, 2012, one of Defendants' agents contacted Plaintiff's realtor and said that Defendants had discovered a cloud on the Property's title that would have to be corrected before the Property could be sold to Plaintiff. (June 25, 2012 Email pp. 1385-86, ECF No. 44-3). At her deposition, Plaintiff stated that she worked with Mr. Klein and paid $1,500 in September 2012 to clear the cloud upon the title. (Pl.'s Dep. 24:3-16). However, Plaintiff has not submitted evidence demonstrating that she notified Defendants that she had attempted to correct the title. In December 20, 2012, the Property was sold by DTS at a Trustee's Sale to someone other than Plaintiff for $360,000. (Trustee's Deed Upon Sale pp. 103-04, ECF No. 44-7). Plaintiff claims that in the fifteen months that elapsed between her execution of the Short Sale Agreement and the foreclosure upon the Property, Defendants repeatedly postponed the closing date of the short sale without explanation. (Pl.'s Aff. ¶ 17).

On October 23, 2013, Plaintiff filed her original Complaint, (ECF No. 1-1), in state court, which alleged, *inter alia*, that Defendants had breached a contract and defrauded Plaintiff by presenting a "pre-approved" price then postponing the proposed closing date without any intention of actually selling the Property to Plaintiff. On December 6, 2013, Defendants removed the action to this Court. (Pet. for Removal, ECF No. 1).

On August 28, 2014, the Court dismissed the Complaint in part, but gave Plaintiff leave to file an amended complaint. (Dismissal Order, ECF No. 36). Plaintiff filed her Amended

Complaint on September 12, 2014, which set forth causes of action for (1) breach of contract; (2) interference with contractual relations; (3) fraud; (4) negligent misrepresentation; (5) violations of Nevada's Deceptive Trade Practices Act ("DTPA"); (6) consumer fraud; (7) intentional infliction of emotional distress; and (8) promissory estoppel. (Am. Compl. ¶¶ 28-84, ECF No. 39).

## II.  LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  Material facts are those that may affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable jury to return a verdict for the nonmoving party. *See id.*  "Summary judgment is inappropriate if reasonable jurors, drawing all inferences in favor of the nonmoving party, could return a verdict in the nonmoving party's favor." *Diaz v. Eagle Produce Ltd. P'ship*, 521 F.3d 1201, 1207 (9th Cir. 2008) (citing *United States v. Shumway*, 199 F.3d 1093, 1103-04 (9th Cir. 1999)).  A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986).

In determining summary judgment, a court applies a burden-shifting analysis.  "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial.  In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).  In contrast, when the nonmoving party bears the burden of proving the claim or defense, the

moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323-24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159-60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987). In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 249. The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249-50.

**III.     DISCUSSION**

In their Motion, Defendants argue that they are entitled to summary judgment as to all of

Plaintiff's claims but do not discuss Plaintiff's cause of action for promissory estoppel. Plaintiff, in her Motion, contends that the Court should enter summary judgment in her favor as to the issue of liability, but that the issue of damages must be determined at trial. In determining whether summary judgment is warranted, the Court will address each of Plaintiff's claims in turn.

### A. Breach of Contract

A breach of contract claim under Nevada law requires "(1) the existence of a valid contract, (2) a breach by the defendant, and (3) damage as a result of the breach." *Med. Providers Fin. Corp. II v. New Life Centers, L.L.C.*, 818 F. Supp. 2d 1271, 1274 (D. Nev. 2011). Generally, a contract is valid and enforceable if there has been "an offer and acceptance, meeting of the minds, and consideration." *May v. Anderson*, 119 P.3d 1254, 1257 (Nev. 2005).

In its Order regarding Defendants' Motion to Dismiss, the Court held that the alleged short sale agreement between Plaintiff and Defendants fell within the statute of frauds because it involved a sale of real property. (Dismissal Order 7:18-8:6, ECF No. 36). Thus, the Court held that Plaintiff's claim could only succeed if the purported agreement had been reduced to writing. (*Id.*). The Court declined to dismiss the claim at that time, because Plaintiff had alleged that a written agreement existed and was within Defendants' exclusive possession. (*Id.* at 8:7-15).

Discovery has now ended, and Plaintiff still has not produced a written agreement to support her breach of contract claim. The Court reiterates that the purported short sale agreement between Plaintiff and Defendants was required to be in writing pursuant to the statute of frauds because it involved a transfer of an interest in land. *See Altman v. PNC Mortgage*, 850 F. Supp. 2d 1057, 1079 (E.D. Cal. 2012) ("[A] purported short sale agreement requires a writing to satisfy the statute of frauds."); *Mackovska v. Recontrust Co., N.A.*, 2:12-

cv-0421-JCM-CWH, 2013 WL 2152697, at *3 (D. Nev. May 16, 2013) ("A purported short sale agreement must satisfy the statute of frauds.").

Because there is no evidence on the record to support Plaintiff's allegation that Defendants executed a written agreement regarding a short sale of the Property, the Court will grant Defendants' Motion for Summary Judgment as to the breach of contract claim.

**B. Intentional Interference with Contractual Relations**

"To establish intentional interference with contractual relations, [a] plaintiff must show: (1) a valid and existing contract; (2) the defendant's knowledge of the contract; (3) intentional acts intended or designed to disrupt the contractual relationship; (4) actual disruption of the contract; and (5) resulting damage." *Sutherland v. Gross*, 772 P.2d 1287, 1290 (Nev. 1989).

In this case, Plaintiff has failed to provide any evidence suggesting that Defendants committed acts that were intended or designed to disrupt a contractual relationship. Though Plaintiff did cancel the original residential purchase agreement when she became aware that the Property had been pre-qualified for the Short Sale Program, there is no evidence to suggest that Defendants included the Property within the Short Sale Program for the specific purpose of thwarting Plaintiff's original agreement.

Furthermore, the Short Sale Agreement explicitly stated that any short sale of the property could not proceed without Defendants' approval. (Short Sale Agreement pp. 243-256, ECF No. 44-6). Therefore, Defendants could not have tortuously interfered with Plaintiff's rights by failing to approve the Short Sale Agreement, because the express provisions of that agreement granted Defendants discretion to reject its terms if they so desired. Thus, the Court finds that Plaintiff has failed to provide evidence that Defendants committed acts that were intended or designed to disrupt one of Plaintiff's contractual relationships, and Defendants' Motion for Summary Judgment will accordingly be granted as to this claim.

/ / /

### C. Fraud or Negligent Misrepresentation

To succeed on a claim for fraud, a plaintiff must show, by clear and convincing evidence, that: (1) a defendant made a false representation; (2) the representation was made with the defendant's knowledge or belief that the representation was false (or knowledge that it had an insufficient basis for making the representation); (3) the defendant intended to induce the plaintiff to act or refrain from acting in reliance upon the misrepresentation; (4) the plaintiff justifiably relied upon the misrepresentation; and (5) the plaintiff suffered damage as a result of the reliance. *Bulbman, Inc. v. Nevada Bell*, 825 P.2d 588, 592 (Nev. 1992).

Here, Plaintiff alleges that Defendants committed fraud by: (1) stating in September 2011 that Plaintiff would "have to be ready to close [on the Property] in two weeks or three weeks" if she purchased through the Short Sale Program, (Pl.'s Deposition 14:25-15:24, ECF No. 44-8); (2) claiming that the Property was pre-approved for sale at the price of $274,753.00, (*id.* at 14:25-15:3); and (3) repeatedly setting, and then postponing, a closing date for the sale, *see, e.g.*, (Jan. 19, 2012 Offer Worksheet pp. 228-29, ECF No. 44-6); (March 12, 2012 Offer Worksheet pp. 384-85, ECF No. 44-4).

Notably, all of these allegedly fraudulent statements involved predictions of future conduct and events. Defendants' agents estimated how long the short sale approval process would take, what the ultimate sale price would be, and the date on which the sale would close. It is well established under Nevada law that the failure to fulfill a promise of future activity does not give rise to a fraud claim "absent evidence that the promisor had no intention to perform at the time the promise was made." *Bulbman*, 825 P.2d at 592; *see also, e.g.*, *Tai-Si Kim v. Kearney*, 838 F. Supp. 2d 1077, 1097 (D. Nev. 2012).

In this case, though it is undisputed that Defendants' alleged predictions did not come to pass, as: (1) the short sale was not approved within three weeks; (2) Defendants attempted to negotiate above the pre-approved sale price after conducting an appraisal; and (3) the closing

was postponed numerous times before Defendants cancelled it altogether, Plaintiff has nonetheless failed to provide evidence indicating that Defendants did not earnestly believe their statements to be true at the time they were made. Accordingly, Plaintiff has failed to satisfy her burden, and Defendants' Motion for Summary Judgment will be granted as to the fraud claim.

Similarly, courts in this district have repeatedly held that "a negligent misrepresentation claim based on a promise of future performance does not exist under Nevada law." *Hernandez v. Creative Concepts, Inc.*, 862 F. Supp. 2d 1073, 1083 (D. Nev. 2012); *see also Cundiff v. Dollar Loan Ctr. LLC*, 726 F. Supp. 2d 1232, 1238 (D. Nev. 2010). The *Cundiff* court articulated well the inherent paradox of alleging that a party has negligently misrepresented its intentions as to future conduct:

> [The defendant's agent] either intended to perform at the time he entered the contract or he did not. If he did not intend to perform at the time he made the promise, that is an intentional misrepresentation, not a negligent misrepresentation. If he intended to perform at the time he entered the contract, then he made no misrepresentation as to his intentions.

726 F. Supp. 2d at 1238. Similarly, in this case, Plaintiff's negligent misrepresentation claim rests upon the absurd premise that Defendants lacked knowledge *of their own intentions* when they discussed the short sale with Plaintiff. Because such a legal theory is not cognizable under Nevada law, the Court will grant Defendants' Motion for Summary Judgment as to Plaintiff's negligent misrepresentation claim.

**D. DTPA Violations and Consumer Fraud**

Under Nevada law, "[a]n action may be brought by any person who is a victim of consumer fraud." Nev. Rev. Stat. § 41.600(1). "A claim under the [DTPA] requires a 'victim of consumer fraud to prove that (1) an act of consumer fraud by the defendant (2) caused (3) damage to the plaintiff.'" *Sattari v. Washington Mut.*, 475 F. App'x 648, 648 (9th Cir. 2011) (citing *Picus v. Wal-Mart Stores, Inc.*, 256 F.R.D. 651, 658 (D. Nev. 2009)). Specifically,

Plaintiff asserts that Defendants violated various provisions of sections 598.0915 and 598.0917 of the Nevada Revised Statutes.  Section 598.0915 provides, in relevant part,

> A person engages in a "deceptive trade practice" if, in the course of his or her business or occupation, he or she: . . .
>
> 2. Knowingly makes a false representation as to the source, sponsorship, approval or certification of goods or services for sale or lease. . . .
>
> 5. Knowingly makes a false representation as to the characteristics, ingredients, uses, benefits, alterations or quantities of goods or services for sale or lease or a false representation as to the sponsorship, approval, status, affiliation or connection of a person therewith. . . .
>
> 9. Advertises goods or services with intent not to sell or lease them as advertised. . . .
>
> 13. Makes false or misleading statements of fact concerning the price of goods or services for sale or lease, or the reasons for, existence of or amounts of price reductions. . . .
>
> 15. Knowingly makes any other false representation in a transaction.

Similarly, section 598.017 provides, in relevant part,

> A person engages in a "deceptive trade practice" when in the course of his or her business or occupation he or she employs "bait and switch" advertising, which consists of an offer to sell or lease goods or services which the seller or lessor in truth may not intend or desire to sell or lease, accompanied by one or more of the following practices: . . .
>
> 3. Requiring other sales or other undisclosed conditions to be met before selling or leasing the advertised goods or services.

Similar to Plaintiff's common law fraud claim, the statutory provisions cited by Plaintiff each require a knowing misrepresentation, an intent to mislead, or a false statement of fact.  As discussed previously, Plaintiff has failed to provide evidence indicating that Defendants knowingly made false representations as to their future conduct or that they did not truly intend

to sell the Property through the Short Sale Program for the pre-approved price.  Furthermore, because Defendants' statements were predictions and estimates regarding future activity, they could not have been false statements of existing fact.  Accordingly, the Court finds that Plaintiff has failed to raise a genuine issue of material fact as to her consumer fraud claims arising under the DTPA, and the Court will grant Defendants' Motion for Summary Judgment as to these claims.

### E. Intentional Infliction of Emotional Distress

To establish a claim of intentional infliction of emotional distress, a plaintiff must demonstrate that: (1) a defendant engaged in "extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress; (2) [the plaintiff] suffered severe or extreme emotional distress; and (3) actual or proximate causation." *Posadas v. City of Reno*, 851 P.2d 438, 444 (Nev. 1993).  "[E]xtreme and outrageous conduct is that which is outside all possible bounds of decency and is regarded as utterly intolerable in a civilized community"; however, this description does not encompass acts which are merely "inconsiderate" or "unkind." *Maduike v. Agency Rent-A-Car*, 953 P.2d 24, 26 (Nev. 1998).

In this case, Plaintiff has failed to demonstrate that Defendants engaged in any extreme and outrageous conduct.  The evidence on the record shows Defendants may have presented an overly optimistic prediction as to the speed of the Short Sale Program and an overly favorable estimate as to the Property's price, but such conduct is certainly not regarded as "utterly intolerable in a civilized community."

Indeed, courts in this district have consistently recognized that conduct which merely amounts to poor customer service cannot give rise to a claim for intentional infliction of emotional distress. *Villagomes v. Lab. Corp. of Am.*, 783 F. Supp. 2d 1121, 1124 (D. Nev. 2011) (holding that a medical laboratory's act of irretrievably misplacing a patient's surgically removed tumor prior to analysis did not amount to extreme and outrageous conduct); *Reborn v.*

*Univ. of Phoenix*, No. 2:13-cv-0864-RFB-VCF, 2015 WL 4662663, at *8 (D. Nev. Aug. 5, 2015) (holding that a university's conduct of misguiding a student in order to delay the approval of his doctoral thesis did not amount to extreme and outrageous conduct); *Beckman v. Match.com*, No. 2:13-cv-0097-JCM-NJK, 2013 WL 2355512, at *9 (D. Nev. May 29, 2013) (holding that a company's failure to inform customers of risks associated with online dating did not amount to extreme and outrageous conduct). Therefore, while Plaintiff's account of Defendants' actions indicates that Defendants were inconsiderate and gave poor customer service, such actions do not amount to extreme and outrageous conduct. Accordingly, the Court will grant Defendants' Motion for Summary Judgment as to this claim.

For the reasons set forth above, Defendants' Motion for Summary Judgment will be granted in full, and Plaintiff's Motion for Partial Summary Judgment will be denied in full. However, as neither party has requested summary judgment as to Plaintiff's promissory estoppel cause of action, that claim remains pending before the Court.

## IV.  CONCLUSION

**IT IS HEREBY ORDERED** that Defendants' Motion for Summary Judgment, (ECF No. 43), is **GRANTED**. Judgment shall be entered in Defendants' favor as to Plaintiff's claims for breach of contract, interference with contractual relations, fraud, negligent misrepresentation, violations of Nevada's Deceptive Trade Practices Act, consumer fraud, and intentional infliction of emotional distress.

**IT IS FURTHER ORDERED** that Plaintiff's Motion for Partial Summary Judgment, (ECF No. 44), is **DENIED.**

**IT IS FURTHER ORDERED** that the parties shall submit a proposed joint pretrial order within thirty days of the entry of this Order.

**DATED** this 25th day of August, 2015.

_____
Gloria M. Navarro, Chief Judge
United States District Court